**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**BROCK E. HUFFMAN,**

    **Petitioner,**

**v.**                                                           Civil action no. 2:10cv50
                                                            Criminal action no. 2:05cr18
                                                            (JUDGE MAXWELL)

**UNITED STATES OF AMERICA,**

    **Respondent.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE THAT THE
DISTRICT COURT DENY AS UNTIMELY AND DISMISS WITH PREJUDICE
DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY [20] AND DENY AS
MOOT DEFENDANT'S MOTION FOR STATUS ORDER OR HEARING [28]**

**I. INTRODUCTION**

On April 13, 2010, Petitioner Brock E. Huffman ("Petitioner"), by counsel B. Craig Manford, Esq., filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, requesting that he either be released from further incarceration or granted a resentencing hearing. (Motion, ECF No. 20) On April 14, 2010, the Government was ordered to respond to the petition. (Order Directing Respondent to Answer, ECF No. 23) The Government filed its response on May 13, 2010, and on July 5, 2010, Petitioner filed his reply. (Response, ECF No. 24; Reply to Response, ECF No. 26) Following review of the Petitioner's motion, the Government's response, and the Petitioner's reply, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II. FACTS

**A.  Conviction and Sentence**

On June 14, 2005, Petitioner was charged by way of a one-count information with theft of government property in violation of Title 18, United States Code, Section 641.  (Information, ECF No. 4)  Also on June 14, 2005, Petitioner entered into an agreement with the United States to waive indictment and plead guilty to the charge.  (Plea Agreement, ECF No. 6)

On December 7, 2005, Petitioner appeared before Senior District Judge Robert E. Maxwell for sentencing.  (Sentencing Proceedings, ECF No. 12)  The court determined that Petitioner's total offense level was 6 with a criminal history category of V, giving him a guideline range of 9-15 months.  (Statement of Reasons, ECF No. 14)  Petitioner's counsel strategically requested an upward variance to 32 months so that he might benefit from the Bureau of Prison's Residential Drug Abuse Program (RDAP) and to persuade judges in five other jurisdictions to run their sentences concurrently with the federal sentence.[1]  Judge Maxwell ultimately made an upward departure and imposed a 60 month sentence, citing Petitioner's pattern of violent criminal conduct and high risk of recidivism, as well as the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the Petitioner, and to provide

---

[1] The offense that brought Petitioner before Judge Maxwell was only one part of a larger crime spree spanning multiple counties in West Virginia and Maryland.  Prior to sentencing on the federal charge, Petitioner had been indicted and convicted by the Circuit Courts of Hardy, Tucker, Pendleton, Grant, and Mineral Counties on charges of burglary, breaking and entering, grand larceny, and conspiracy.  (Memorandum in Support of Motion 1-2, ECF No. 20)  At the time of sentencing, Petitioner was in state custody serving sentences already imposed by the Circuit Courts of Hardy and Pendleton Counties.  (Response 2, ECF No. 24)  Additionally, Petitioner was facing similar charges in Garrett and Allegany Counties in Maryland.  (Statement of Reasons 4, ECF No. 14)

Petitioner with correctional treatment. (Statement of Reasons 4-5, ECF No. 14)

Following sentencing, Petitioner was returned to the West Virginia Division of Corrections to serve out the remainder of his state sentences, amounting to 56 months of incarceration. (Memorandum in Support of Motion 3, ECF No. 20) On April 20, 2009, Petitioner was remanded to the custody of the Bureau of Prisons, at which time he learned that he would not receive credit on his federal sentence for time served on the underlying state charges. Id. Additionally, Petitioner learned that he would not be eligible for RDAP due to a detainer that had been lodged against him in Allegany County, Maryland. Id. at 4-5.

### III. CONTENTIONS OF THE PARTIES

**A.     Petitioner's § 2255 Motion**

In his federal habeas petition and attached memorandum of law, Petitioner raises the following arguments:

- this Court should apply the doctrine of equitable tolling and allow Petitioner's § 2255 motion to proceed because circumstances external to his own conduct prevented timely filing of his petition and enforcement of the statute of limitations would constitute gross injustice. Petitioner's argument is based on his belief that the state and federal sentences were to be served concurrently, that he did not have an opportunity to discover otherwise until being remanded to the custody of the Bureau of Prisons after 56 months of state incarceration, and that being forced to serve an additional 60 month sentence would impose a sentence much greater than the sentence agreed to by the state courts or envisioned by Judge Maxwell; (Memorandum in Support 22-27, ECF No. 20)

- this Court should hold that a prisoner serving consecutive sentences, first state then federal,

may wait until he begins serving his federal sentence before filing his § 2255 action, despite the fact that the federal judgment has become final, because § 2255(a) requires the prisoner to be "in custody under sentence of a court established by Act of Congress"; Id. at 31-32.

- that Petitioner's federal sentence should be subject to collateral attack under § 2255 because it was based in part upon Judge Maxwell's mistaken belief that the state and federal sentences would run concurrently; Id. at 36-37.

- that Petitioner's guilty pleas were entered into unknowingly and involuntarily because he believed that all of his sentences would be served concurrently; Id. at 40-42.

- that Petitioner's due process rights were violated by the West Virginia Division of Corrections when it delayed commencement of his federal sentence; Id. at 44.

- that the West Virginia Division of Corrections usurped the judicial function of the state and federal courts by delaying the commencement of Petitioner's federal sentence; Id. at 44. and

- that the cumulative effect of the errors in Petitioner's case resulted in the deprivation of his due process rights, requiring this Court to either immediately release him from incarceration or grant him a resentencing hearing. Id. at 45.

**B.     Government's Response**

In its response, the Government answers the Petitioner's claims as follows:

- that the record fails to demonstrate a clear intention of the District Court to sentence Petitioner to a concurrent sentence, and that the evidence cited by the Petitioner in support of his belief show significant uncertainty and doubt as to the sentence that he would receive; (Response 10-14, ECF No. 24)

- that Petitioner misconstrues the applicable case law in arguing that he must be in federal custody before he may file a § 2255 motion; Id. at 14-15.

- that Judge Maxwell's sentence was not based upon his intention to coordinate his sentence with the state courts, but was instead based upon the recommendations contained in the presentence investigation report and a lengthy examination of the factors contained in Title 18, United States Code, § 3553(a); Id. at 14-17.

- that Petitioner was never promised concurrent sentences for all of his crimes, and that the West Virginia Division of Corrections carried out its sentence accurately because the sentencing order from Pendleton County made no mention of any concurrent sentences other than that from Hardy County; Id. at 18-19.

- that no errors were made by the courts in sentencing Petitioner, and that he cannot fairly argue that he didn't know his own sentence when he was present in Pendleton County Circuit Court at the time his sentence was imposed. Id. at 20.

**C. Petitioner's Reply**

In his reply, Petitioner addresses the Government's argument by stating that:

- Judge Maxwell believed that the state courts would order their sentences to run concurrently with the federal sentence; (Reply to Response 2, ECF No. 26)

- Judge Maxwell's belief as to the potential sentences imposed by the state courts was incorrect and violated Petitioner's due process rights; Id. at 2.

- Petitioner's guilty plea in Pendleton County was made in reliance on his belief that the state court judgment would run concurrently with his sentences in other jurisdictions; Id. at 4. and

- the statutory language of § 2255 and the case law interpreting the statute support his argument that, under the facts of this case, Petitioner could only file a § 2255 after being remanded to the custody of the Bureau of Prisons. Id. at 6.

## IV. ANALYSIS

### A. Standard of Review

A proceeding to vacate a judgment of conviction is a civil collateral attack upon the judgment of conviction, and the burden of proof is upon the petitioner to establish by a preponderance of the evidence a claim upon which he seeks to have the judgment vacated. See 28 U.S.C. § 2255; see also Miller v. United States, 261 F.2d 546 (4th Cir. 1958). Habeas relief should be awarded where:

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b); United States v. Pettiford, 612 F.3d 270, 277 (4th Cir. 2010). A district court resolves a prisoner's § 2255 in two steps:

> First, the district court must determine whether the prisoner has met his burden of showing that his sentence is unlawful on one of the specified grounds. Second, if the prisoner's sentence is found unlawful on one of those grounds, the district court should grant the prisoner an "appropriate" remedy, which includes discharge, resentencing, or a new trial.

Pettiford, 612 F.3d at 277. If the prisoner fails to meet the threshold inquiry that his sentence is unlawful, the court must deny the petition. Id. (citing United States v. Hadden, 475 F.3d 652, 661 (4th Cir. 2007)).

**B.     Petitioner's Claim Was Filed Outside the One-Year Statute of Limitations Because Judgment In His Case Became Final On December 7, 2005, and Petitioner Could Have Discovered the Facts Underlying His Claim On That Date**

Prior to 1996, there was no time limitation on a federal prisoner's ability to collaterally attack his conviction in a § 2255 motion. United States v. Sanders, 247 F.3d 139, 142 (4th Cir. 2001) (citing United States v. Torres, 211 F.3d 836, 838 (4th Cir. 2000)). This changed in 1996 with the enactment of the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"). Id. AEDPA amended 28 U.S.C. § 2255 to provide a one-year limitations period for the filing of § 2255 motions. Id. Section 2255's statute of limitations states:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The Court has the power to raise the issue of timeliness in habeas proceedings sua sponte. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002).[2]

Although the AEDPA does not define when a judgment of conviction becomes final, the

---

[2] Pursuant to the holding in Hill v. Braxton, if the timeliness of a petition is raised sua sponte the Court must give pro se petitioners notice and an opportunity to respond. Hill, 277 F.3d at 706-708. However, Petitioner in this case is represented by counsel and has thoroughly briefed the issue, so notice is not required.

Fourth Circuit has determined that a conviction is final on the date upon which he fails to pursue further direct appellate review. See id. at 142 (citing United States v. Torres, 211 F.3d 836, 838 (4th Cir. 2000)). Petitioner's judgment order was entered on December 7, 2005. (Judgment, ECF No. 13) Petitioner declined to pursue an appeal, therefore his conviction became "final" for the purposes of § 2255(f)(1) on December 7, 2005. See Sanders, 247 F.3d at 142. However, Petitioner asserts that the limitations period in his case falls under § 2255(f)(4), and did not begin to run until he was transferred to the custody of the Bureau of Prisons on April 20, 2009. (Motion 22, ECF No. 20) Petitioner claims that April 20, 2009, was the date upon which he first discovered that his federal sentence was to be served consecutively, and that due diligence would not have revealed this information earlier. Id.

In determining whether § 2255(f)(4) should be applied, "[t]he relevant inquiry should focus on when the factual predicate of a claim could have been discovered, as opposed to the date on which the petitioner has in his possession evidence to support his claim." Facundo v. United States, 2010 WL 2245992, at *3 (W.D.N.C. June 2, 2010) (quoting Gonzalez-Ramos v. United States, 2007 WL 1288634, at *7 (S.D.N.Y. May 2, 2007)). Although § 2255 does not define the term, due diligence "does at least require that a prisoner make *reasonable* efforts to discover the facts supporting his claims." Facundo, 2010 WL 2245992, at *3 (W.D.N.C. June 2, 2010) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 818 (8th Cir. 2008)). If prompt action would have revealed the factual basis for a claim, this Court should not apply § 2255(f)(4). Johnson v. United States, 544 U.S. 295, 311 (2005) (refusing to apply § 2255(f)(4) where "there is every reason to believe that prompt action would have produced [the facts on which the claim for relief is based] well over a year before [the petitioner] filed his § 2255 petition.").

Petitioner's Judgment Order states that "[t]he defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: sixty (60) months." (Judgment 2, ECF No. 13). The order does not contain language indicating that Judge Maxwell intended the sentence to be executed concurrent to any previously-imposed state sentence. Because the order does not state that Petitioner's sentence is to be served concurrent to his previously-imposed state sentence, his sentence is to be served consecutively. 18 U.S.C. § 3584(a) ("[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."); see also United States v. Saunders, 162 F.3d 1158, 1998 WL 539482, at *2, n.5 (4th Cir. Aug. 25, 1998) (unpublished table decision) (stating that a federal sentence is consecutive to a previously-imposed state sentence if the federal sentence does not specify whether it is concurrent or consecutive). The language of the Judgment Order contradicts Petitioner's assertions about the nature of his sentence, and Petitioner could have discovered this fact on the date of sentencing by consulting with counsel or conducting his own independent legal research. Therefore, the undersigned Magistrate Judge recommends that the District Court find that the statute of limitations began to run on December 7, 2005, the date Petitioner's conviction became final, and further recommends that the District Court find Petitioner's § 2255 motion to be filed outside of the one-year statute of limitations.

C. **Equitable Tolling Does Not Apply Because Petitioner Failed to Diligently Pursue His Rights and Has Failed to Establish Extraordinary Circumstances Beyond His Control**

Even if this Court finds his motion to be untimely, Petitioner argues that the one-year statute of limitations should be equitably tolled in his case because he was unable to determine his discharge date from federal incarceration until he was delivered to the custody of the Bureau of Prisons on April 20, 2009. (Memorandum in Support 21-27 ECF No. 20) Petitioner, by implication,

argues that circumstances external to his own conduct prevented him from timely filing his petition because the timing of his transfer into federal custody was outside of his control. Furthermore, Petitioner believes that dismissing his motion as barred by the statute of limitations would result in a gross injustice because "it was never Judge Maxwell's intention for the Defendant to serve more than an additional two (2) years, ten and one-half (10 ½) months in federal custody." Id. at 22.

"[I]n order to be entitled to equitable tolling, the movant must show (1) that he has diligently pursued his rights and (2) that some extraordinary circumstance prevented the timely filing." United States v. Oriakhi, 2010 WL 3522005, at *1 (4th Cir. Sept. 10, 2010) (per curiam). Equitable tolling is applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (quoting Alvarez-Machain v. United States, 107 F.3d 696, 700 (9th Cir. 1996)). The Fourth Circuit has cautioned courts to narrowly apply the equitable tolling doctrine:

> any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation.

Id.

In his motion, Petitioner points to several parts of the record to support his contention that he reasonably believed his federal sentence was to be concurrent with his state sentences. (See Memorandum in Support 23-25, ECF No. 20) However, as discussed in the previous section of this Report and Recommendation, Petitioner's Judgement Order did not designate his sentence as

concurrent to any previously-imposed sentence. (Judgment 2, ECF No. 13) Thus, at the time of sentencing, the discrepancy between Petitioner's expectations and the reality of his sentence were apparent on the face of the Judgment Order – section 3584(a) requires that Petitioner's sentence be executed consecutively, and legal research would have revealed this fact. See 18 U.S.C. § 3584(a). Despite having notice of the contents of the Judgment Order in his case, Petitioner nonetheless failed to act for over 56 months, and thus cannot be said to have "diligently pursued his rights" so as to justify equitable tolling. Furthermore, at least one District Court within the Fourth Circuit, after applying the legal standard articulated in Harris, has determined that lack of knowledge about whether state and federal sentences are being executed consecutively does not justify equitable tolling. See McCurry v. United States, 2009 WL 2738725 (W.D.N.C. Aug. 26, 2009) (holding that Petitioner's claim that he only recently learned of the consecutive nature of his state and federal sentences "fail[ed] to establish that the facts causing his late filing are extraordinary, out of his control, and prevented him from filing his § 2255 motion on time.").[3] Petitioner's late filing was not caused by extraordinary circumstances beyond his control because consultation with counsel or independent research would have revealed the consecutive nature of his sentences. Accordingly, the undersigned Magistrate Judge recommends that the District Court decline to apply the doctrine of equitable tolling in this case because Petitioner failed to diligently pursue his rights and has failed

---

[3] Additionally, the Court notes that Defendant's argument is partly based on allegations that he was not "timely advised by his counsel regarding the consecutive federal sentence." (Memorandum in Support 26, ECF No. 20) However, any failure of Petitioner's counsel to advise him of the consecutive nature of his sentences, or to adequately research the impact of the lack of concurrent language in the judgment order, does not constitute the extraordinary circumstances necessary to apply equitable tolling. See Merritt v. Blaine, 326 F.3d 157 (3rd Cir. 2003) (applying general rule that "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary circumstances required for equitable tolling'"); see also Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003) (favorably citing Merritt).

to establish extraordinary circumstances beyond his control that made it impossible for him to timely file his motion.

**D.** **After Being Sentenced by Judge Maxwell and Returned to the Custody of the State of West Virginia, Petitioner Was "In Custody Under Sentence of a Court Established by Act of Congress" for Purposes of § 2255**

As an alternative argument, Petitioner asserts that the one-year statute of limitations did not begin to run in his case until he was remanded to the custody of the Federal Bureau of Prisons on April 20, 2009. (Memorandum in Support 27-32, ECF No. 20) His argument derives from the statutory language of § 2255(a), which states that "[a] prisoner **in custody under sentence of a court established by Act of Congress** . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). According to Petitioner, this language should be strictly construed and the one-year statute of limitations should not be enforce against until a prisoner is under the dominion of the Federal Bureau of Prisons. (Memorandum in Support 31, ECF No. 20)

The United States Supreme Court has held that "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of § 2241(c)(3)." Peyton v. Rowe, 391 U.S. 54, 67 (1968). In Peyton, the question presented to the Court was whether a district court may "entertain a petition for a writ of habeas corpus from a prisoner incarcerated under consecutive sentences who claims that a sentence that he is scheduled to serve in the future is invalid because of a deprivation of rights guaranteed by the Constitution." Id. at 55. Respondents Robert Rowe and Clyde Thacker, who were both serving consecutive sentences in the Virginia State Penitentiary, filed their respective petitions for relief from allegedly unconstitutional future sentences; the district courts dismissed their petitions as premature, holding that they were not yet "in custody under an

unconstitutionally imposed sentence." Id. at 55-57. The Fourth Circuit Court of Appeals reversed and remanded, declining to follow the holding in McNally v. Hill, 293 U.S. 131 (1934), which held that the habeas corpus statute does not authorize attacks upon future consecutive sentences. Id. at 55, 57.

The United States Supreme Court granted certiorari to re-examine McNally, holding that "the decision in that case was compelled neither by statute nor by history and that today it represents and indefensible barrier to prompt adjudication of constitutional claims in the federal courts." Peyton, 391 U.S. at 55. In so finding, the Court determined that a strict reading of the jurisdictional granted contained in § 2241 undermined the writ of habeas corpus in several important respects. First, the writ is often used to resolve factual issues that were not adequately developed in the original proceedings, so any delay in habeas corpus proceedings "can harm both the prisoner and the State and lessens the probability that final disposition of the case will do substantial justice." Id. at 62-63. Second, "a principal aim of the writ is to provide for swift judicial review of alleged unlawful restraints of liberty . . . [but] the prematurity rule of McNally in many instances extends without practical justification the time a prisoner entitled to release must remain in confinement." Id. at 63-64. Third, a more expansive reading of the jurisdictional language would eliminate inconsistencies between purpose and practice, and promote the underlying purpose of the writ: "[the writ] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose – the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." Id. at 64-66 (quoting Jones v. Cunningham, 371 U.S. 236, 243 (1963)).

The Court expanded its interpretation of the "in custody" language in Garlotte v. Fordice,

515 U.S. 39 (1995), holding that a prisoner remains "in custody" under his consecutive sentences until all are served, and may attack the validity of the sentence scheduled to run first even if that sentence has already been served but postpones the prisoner's eligibility for parole. Garlotte, 515 U.S. at 41. Harvey Garlotte entered guilty pleas on September 16, 1985, for possession with intent to distribute marijuana and two counts of murder. Id. The State and defense counsel expressed indifference as to the order in which to impose the sentences, so the trial court ordered the sentence for the possession charge to be served first, with the two murder sentences to be served consecutively thereafter. Id. at 42. After sentencing, Garlotte moved to withdraw his guilty plea on the marijuana charge, and he exhausted his state remedies on January 18, 1989, when the Mississippi Supreme Court denied relief. Id. By this time, Garlotte had completed his sentence for the marijuana offense and had commenced serving his two murder sentences. Id.

On October 6, 1989, Garlotte filed a habeas corpus petition in the United States District Court for the Southern District of Mississippi challenging the voluntariness of his guilty plea on the marijuana charge. Garlotte, 515 U.S. at 42-43. The district court dismissed on the merits, but on appeal the Fifth Circuit dismissed for lack of jurisdiction, holding that Garlotte was no longer "in custody" on the marijuana conviction at the time he filed his petition. Id. at 43. The Supreme Court granted certiorari and reversed, applying the Court's holding in Peyton even in situations where "the sentence imposed under the challenged conviction lies in the past rather than in the future." Id. at 43, 46. Because invalidating Garlotte's marijuana conviction would advance the date of his eligibility for release, the Court reasoned that allowing Garlotte to challenge the previous conviction served "the core purpose of habeas review." Id. at 47.

At the outset, the Court notes that Petitioner is incorrect in his assertion that the federal

habeas corpus statutes should be strictly construed.[4] Section 2255 is a remedial statute and is to be read "consistent with the canon of construction that remedial statutes should be liberally construed." See Peyton, 391 U.S. at 65 (1968); see also Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 258 (1995) (listing the federal habeas corpus statute, 28 U.S.C. § 2255, as an example of a remedial statute). The Court also notes that, contrary to Petitioner's assertion, there is no conflict between the holdings of Peyton and Garlotte. Petitioner's argument on this point appears to stem from the fact that Garlotte was allowed to challenge his conviction after serving a three-year sentence; Petitioner's logic seems to follow that if Peyton allows prisoners to immediately file their petition while in state custody, Garlotte's petition should have been time-barred because it was filed three-years after he began serving his sentence. However, Petitioner's argument ignores two key facts that invalidate his assertion. First, both Peyton and Garlotte were decided prior to the enactment of the AEDPA, so neither of those decisions were made in the context of a time limitation on the right to file habeas petitions. Second, Garlotte was pursuing his state remedies at the time his initial sentence was completed; unlike the facts of this case, Garlotte pursued an appeal, so his sentence was not "final" until the Mississippi Supreme Court denied relief on January 18, 1989. Garlotte's subsequent

---

[4] Petitioner's argument on this point is internally inconsistent. On the one hand, he argues that the "in custody under sentence of a court established by Act of Congress" language of the statute is to be construed strictly in his favor. However, for Petitioner's argument to prevail, this Court would be forced to liberally construe language from the same statute and hold that either the statute of limitations does not apply, or that his state incarceration was an "impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States" under § 2255(f)(2). See 28 U.S.C. § 2255(f). Petitioner's motion was filed more than one year after his judgment of conviction became final for purposes of § 2255(f)(1), he has not alleged a new right recognized by the Supreme Court for purposes of § 2255(f)(3), he has failed to exercise due diligence for purposes of § 2255(f)(4), and has not established extraordinary circumstances justifying equitable tolling, so Petitioner would have to fall under the time limitations contained in § 2255(f)(2) for his cause of action to proceed.

habeas petition, filed on October 6 of that year, would have still been timely even if the AEDPA had been in force at the time.

As to the remainder of Petitioner's argument, he correctly points out that neither the United States Supreme Court nor the Fourth Circuit Court of Appeals have directly addressed the meaning of the "in custody" language of § 2255 in the context of the exact factual circumstances presented in this case. However, five circuits have applied <u>Peyton</u> to these facts, holding that for purposes of § 2255 a prisoner is "in custody" and may petition to correct or invalidate his sentence if he is incarcerated in either a federal or state prison, provided that a federal court has sentenced him. See <u>Ospina v. United States</u>, 386 F.3d 750 (6th Cir. 2004); <u>Holleman v. United States</u>, 721 F.2d 1136 (7th Cir. 1983); <u>Simmons v. United States</u>, 437 F.2d 156 (5th Cir. 1971); <u>Jackson v. United States</u>, 423 F.2d 1146 (8th Cir. 1970); <u>Desmond v. United States Board of Parole</u>, 397 F.2d 386 (1st Cir. 1968). Additionally, the Fourth Circuit has indicated in dicta that the holding of <u>Peyton v. Rowe</u> also extends to the "in custody" requirement under § 2255:

> Unfortunately for Hillary, however, § 2255 neither uses "sentence" in that fashion nor embraces bright lines. To show why, we turn back to the statute's language. The § 2255 petitioner must be "in custody" under a "sentence" . . . .
>
> How, then, can he challenge his § 924(c) "sentence" before he begins to serve it? He can do so only because the Supreme Court has held that, for jurisdictional purposes, consecutive sentences must be viewed in the aggregate. <u>Peyton v. Rowe</u>, 391 U.S. 54, 56, 64-65, 88 S.Ct. 1549, 1550, 1554-55, 20 L.Ed.2d 426 (1968) (prisoner serving consecutive sentences is "in custody" under any of them for purposes of § 2241); <u>Garlotte v. Fordice</u>, 515 U.S. 39, ----, 115 S.Ct. 1948, 1952, 132 L.Ed.2d 36 (1995) (§ 2254 petitioner may challenge prior, expired sentence to which current sentence was consecutive, because "we view consecutive sentences in the aggregate, not as discrete segments.").

See <u>United States v. Hillary</u>, 106 F.3d 1170, 1172 (4th Cir. 1997). Nonetheless, Petitioner urges this Court to reach a different conclusion and decline to extend <u>Peyton</u> to the factual circumstances of

this case. Instead, Petitioner argues that state prisoners subject to a future consecutive federal sentence may, but are not required, to file a habeas petition while in state custody, and that the one-year statute of limitations should not begin to run until the prisoner completes the underlying state sentence and is transferred to the custody of the Bureau of Prisons.

Particularly relevant to this discussion is the case of Ospina v. United States, 386 F.3d 750 (6th Cir. 2004), cert. denied, 512 U.S. 1226 (1994), which is factually similar to the case at bar and is also the only case decided after the enactment of the one-year statute of limitations imposed under the AEDPA. Joaquin Ospina pled guilty on October 15, 1992, to one count of carrying a firearm during a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). Ospina, 386 F.3d at 751. Ospina was sentenced by the district court on February 5, 1993, receiving five years confinement to be served consecutively to his state sentence. Id. Ospina remained in the custody of the State of Ohio until May 8, 2001, at which time he began serving his federal sentence. Id. On May 7, 2002, Ospina filed a § 2255 motion alleging that he was innocent of the federal firearms charge pursuant to the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995).[5] Id. Although his motion was filed within one year of the start of his federal incarceration, the district court denied Ospina's motion as untimely, citing the Sixth Circuit's holding in Pryor v. United States, 278 F.3d 612 (6th Cir. 2002).[6] Id. However, the district court granted Ospina's request for a certificate of appealability on the issue of whether his petition was barred by § 2255's one-year statute of

---

[5]In Bailey, the Supreme Court held that a defendant must actively use a firearm to be convicted under 18 U.S.C. § 924(c). Bailey v. United States, 516 U.S. 137 (1995).

[6] In Pryor, the Sixth Circuit gave prisoners convicted under § 924(c) until May 19, 1999, to file a motion to challenge their sentences pursuant to the Supreme Court's holding in Bailey. Pryor v. United States, 278 F.3d 612 (6th Cir. 2002).

limitations. Id. at 751-52. The Sixth Circuit affirmed the decision of the district court, holding that its prior decision in Ward v. Knoblock, 738 F.2d 134, 139-140 (6th Cir. 1984), controlled despite the subsequent enactment of the AEDPA.[7] Id. at 752. The court reasoned that, although Ward was intended to expand, and not limit, prisoners' access to federal courts, the AEDPA "requires a more stringent result. If we are to give effect to this statute of limitations, and if we are to harmonize it with our result in Ward, we must reaffirm Ward's understanding of 'in custody' in the context of this case." Id. The court also rejected Ospina's argument that Ward merely permits, rather than requires, state prisoners to use § 2255 to challenge a consecutive federal sentence:

> We cannot read Ward or § 2255 in such a manner. If a prisoner is in custody and can, therefore, avail himself of § 2255 relief, and if § 2255 requires prisoners to use said relief before a statute of limitations runs, then the statute of limitations should begin to run from the moment that the prisoner can use § 2255. In other words, if petitioner may use § 2255 while he is in state prison, he must do so then to prevent the statute of limitations from barring his action.

Id.

Like the court in Ospina, this Court must harmonize the Supreme Court's holdings in Peyton and Garlotte with the statute of limitations imposed under the AEDPA. Although the outcome works a hardship in this particular case, the appropriate balance is best achieved by adopting the Sixth Circuit's holding in Ospina. Construing the "in custody" language of § 2255 to include prisoners under sentence by a federal court but in the custody of a state penal system supports the underlying purposes of the writ, reducing or even eliminating the amount of time that a prisoner might wait for relief from an unconstitutional sentence, while preserving the efficacy of the one-year

---

[7] In Ward, the Sixth Circuit extended the Supreme Court's ruling in Peyton v. Rowe to encompass prisoners incarcerated by the State but subject to a future consecutive federal sentence. Ward v. Knoblock, 738 F.2d at 134, 139-140 (6th Cir. 1984).

statute of limitations as written. In contrast, Petitioner's argument that he was not required to file his petition while incarcerated on the underlying state sentence would force this Court to either strip the AEDPA statute of limitations of its meaning or reject clear precedent from the Supreme Court on the interpretation of the "in custody" language. The former approach violates the rule of statutory interpretation that statutes are to be construed "in a manner that gives effect to all of their provisions," United States ex rel. Eisenstein v. City of New York, 556 U.S. ----, ----, 129 S.Ct. 2230, 2234, 173 L.Ed.2d 1255 (2009), while the latter approach would create the same hardships that the ruling in Peyton sought to avoid, forcing some prisoners to wait for the completion of their underlying state sentence before challenging a potentially unconstitutional consecutive federal sentence. See Peyton, 391 U.S. 54. This Court should not make such a sweeping departure from the purposes and goals of the writ, the language of the AEDPA, case law of the Supreme Court and other federal circuits, and reasoning already articulated by the Fourth Circuit in order to accommodate one prisoner who, as discussed in the previous sections, had ample time to discover the alleged error in his sentence yet chose not to act. Therefore, the undersigned Magistrate Judge recommends that the District Judge find Petitioner to have been "in custody under sentence of a court established by Act of Congress" at the time he was sentenced by Judge Maxwell and returned to the custody of the West Virginia Division of Corrections, reject Petitioner's argument that he was not required to file his § 2255 motion until he was transferred to the custody of the Bureau of Prisons, and find that Petitioner's habeas petition was untimely under the one-year statute of limitations imposed by the AEDPA.

## V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 20) be **DENIED AND DISMISSED WITH PREJUDICE** as untimely. Additionally, the undersigned Magistrate Judge recommends that Petitioner's Motion for a Status Hearing or Order (ECF No. 28) be **DENIED AS MOOT** because timely resolution of his petition is forthcoming.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to providee a copy to all counsel of record as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: October 26, 2010

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE